Konrad L. Trope (California SBN: 133214)
TROPE AND TROPE LAW GROUP
415 North Camden Drive, Suite 111
Beverly Hills, California 90210
Phone: (818) 575-7423
Email: ktrope@tropeandtropelawgroup.com

Attorneys for Plaintiff TRIDENT CONCERT
PRODUCTIONS, LLC, a limited liability company

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| TRIDENT CONCERT PRODUCTIONS, LLC, a Nevada limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> David A. Helfant, an individual; and DOES 1 through 10, inclusive, <br><br> Defendant. | Case No: _____ <br><br> **COMPLAINT FOR:** <br><br> (1) Breach of Contract <br> (2) Breach of the Covenant of Good Faith and Fair Dealing <br> (3) Fraud <br> (4) Declaratory Relief <br><br> **JURY DEMAND** |

**COMES NOW**, Plaintiff TRIDENT CONCERT PRODUCTIONS, LLC, a Nevada limited liability company presents its complaint herein against Defendant David A. Helfant, Esquire, a citizen of the State of California and hereby alleges as follows:

## THE PARTIES

1.      Plaintiff TRIDENT CONCERT PRODUCTIONS, LLC (Trident) is a Nevada limited liability company with a principal office address of 6042 Grey Rock Road, Agoura Hills, California 91301. Trident's corporate headquarters is

located at 6605 Grand Montecito Pkwy, Suite 100, Las Vegas, NV, 89149.

2.      Defendant David A. Helfant, Esquire (Helfant) is a resident of the State of California. Defendant Helfant is an attorney licensed by the State of California, holding State Bar license No. 93862.

3.      Plaintiff is informed and believes and based thereon alleges that, at all times herein mentioned, each of the Defendants (including *inter alia*, the fictitiously named Defendants) was the agent, servant, employee or co-conspirator of each of the other Defendants, and doing the things herein alleged, was acting in the scope of his, her, or its actual, apparent or special authority as such agent, servant, employee or co-conspirator, and with the permission or consent of each such co-Defendant.

4.      The true names and capacities of the Defendants sued in this Complaint as DOES 1 through 10, inclusive, whether individual, corporate, associate, or otherwise, are presently unknown to Plaintiff who therefore sues these Defendants by such fictitious names.  Plaintiff will amend this Complaint to set forth the true names and capacities of DOES 1 through 10, inclusive, when they have been ascertained or at the time of trial herein.  Plaintiff is informed and believes and based thereon alleges that each of these fictitiously named Defendants participated in some manner in the events and occurrences referred to hereinafter and/or proximately caused the damages complained of herein.

5.      Plaintiff is further informed and believes, and upon such information and belief alleges that each of the Defendants including DOES 1-10, inclusive, were at all times herein mentioned acting in concert with, and in conspiracy with, each and every one of the remaining Defendants.

6.      At all times mentioned herein, Defendants and each of them, were an owner, co-owner, agent, representative, partner and/or alter ego of its co-defendants, or otherwise acting on behalf of each and every remaining Defendant,

TRIDENT/HELFANT COMPLAINT

and in doing the things herein after alleged, were acting within the course and scope of their authorities as an owner, co-owner, co-owner, agent, representative, partner and/or alter ego of its co-defendants, with the full knowledge, permission and consent of each and every remaining Defendant, each co-defendant having ratified and approved the acts of the other co-defendants.

7.      Wherever appearing in this Complaint each and every reference to Defendants or to any of them is intended to be and shall be a reference to all Defendants hereto and to each of them named and unnamed including all factiously named Defendants unless said reference is otherwise specifically qualified.

## **JURISDICTION AND VENUE**

8.      This Court has Plaintiff Trident brings this civil action pursuant to 28 U.S.C. § 1332 which mandates that the District Courts shall have regional jurisdiction where the civil matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states. The Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 as the non-federal question claims for breach of contract, fraud and conversion arose from the same nucleus of operative facts and thus are inextricably linked to and arise from the same core set of facts.

9.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) and (b)(2) because Plaintiff maintains its business in this judicial district and the events or omissions giving rise to the claims occurred in this judicial district, and all monies due to Plaintiff from Defendants were due and payable in this judicial district.

TRIDENT/HELFANT COMPLAINT

## STATEMENTS OF FACTS COMMON TO ALL CLAIMS AGAINST
## DEFEDNDANTS

10.     The Kingston Trio is a folk music group which has been on the music scene since 1958. Over the past 65 years, The Trio has won four Grammy awards, and at one point was responsible for 40% of the revenue at Capitol Records, until the Beatles came along and displaced The Trio as Capitol's mainstay group in the mid 1960's.

11.     Since that time, the Trio has continued to perform all over the world and continues to tour to this day.

12.     Members of The Kingston Trio formed a concert promotion company called Trident Concert Productions, LLC. Trident was formed for the purpose of interfacing with the Greek Theater for producing two concerts in summer of 2024 at the Greek Theater. Over the two nights of these concerts, a concert film, as well as documentary was to be filmed along with the creation of a double album.

13.     In July of 2023, Trident Concert Productions, through its counsel, Konrad L. Trope, of Trope and Trope Law Group, reached out to David Helfant, Esquire, a well-regarded music attorney. Trope and Helfant had worked together on various projects 15 years prior.

14.     At these meetings in July, Trope emphasized to Helfant that the Greek Theater tended to book 15 months out and thus it was imperative that efforts be made to reach out to the Greek Theater immediately to secure concert dates for summer of 2024.

15.     Helfant assured Trope that he had the expertise and the inside track for obtaining dates with the Greek Theater. Instead, Helfant billed several hours for trying to solicit Trident and therefore solicit the Trio to hire his clients for producing the album and for producing the documentary film. And, indeed, when Helfant's clients tried soliciting the Trio for producing the documentary film,

TRIDENT/HELFANT COMPLAINT

Helfant's clients violated all kinds of federal security laws. Inquires about this to Helfant went unanswered.

16.    Worse, however, is that Helfant did not have expertise or the inside track or any superior knowledge about how to secure concert dates at the Greek Theater. Instead, Helfant created an overinflated bill, along with convincing Trident that it needed to retain a former Greek Theater general manager who could provide inside access.

## TIMELINE OF MATERIAL EVENTS

17.    On August 9, 2023, Helfant emailed Trope regarding prior initial discussions. See Exhibit "1" attached hereto.

18.    On August 10, 2023, Helfant emailed Trope regarding a meeting about the project. See Exhibit "2" attached hereto.

19.    On August 17, 2023, emailed were exchanged showing that the Greek Theater wanted deposits for their concert bookings and Helfant had no clue about this protocol, despite telling Plaintiff that he had experience in dealing with the Greek Theater and had an "inside track" to the Greek Theater.

20.    In fact, Helfant had no idea of how the Greek Theater arranged for acts for its seasonal lineup for the following summer, despite Helfant telling Plaintiff that he was experienced at working with the Greek Theater and had an "inside track" to getting the Trio booked into the Greek Theater.

21.    In early September, Helfant was still attempting to reach the Greek Theater for booking the Trio but was unsuccessful despite telling Plaintiff that he was experienced at this task and that he had an inside track to getting the Trio booked at the Greek Theater.

22.    Then Helfant, despite claiming that he was experienced in dealing with the Greek Theater, for arranging bookings, told Plaintiff that Plaintiff had to retain Jim McCue, the alleged former General Manager of the Greek Theater, to

TRIDENT/HELFANT COMPLAINT

essentially grease the wheels to get Plaintiff even considered by the Greek Theater. Now, in addition to having retained Helfant, Plaintiff also were now having to pay for another consultant to make this work, despite being told that Helfant had everything covered.

23.     Helfant in addition to claiming to help the Trio obtain concert dates at the Greek Theater was also heavily pitching his film/motion picture clients to be the cinematographers for the Kingston Trio documentary that was to be filmed during the two days of concerts. The pitch presented by Helfant's film production clients violated Federal securities laws, including Regulation D of the 1934 Securities and Exchange Act, because there were no proper disclosures about seeking private investors for the film. When Plaintiff asked Helfant about this lapse in compliance with Regulation D, he assured Plaintiff of getting a response, which never happened.

24.     Attached hereto as Exhibit "3" are the Retainer Agreement and the Conflict Waiver Agreement between Trident Concert Productions, LLC (who were representing the Trio concert team) and Helfant's law offices.

25.     Attached hereto as Exhibit "4" is Jim McCue's consulting agreement, which essentially required that Trident Concert Productions/Kingston Trio Artists pay $10,000 for "inside access" to the Greek Theater, while also paying David Helfant $650/hr. for every email, phone call, etc. Moreover, Helfant charged Trident for negotiating the Agreement with McCue, except he gave no input into McCue's Agreement. Konrad Trope, Plaintiff's counsel, made the edits and requested changes. Helfant just served as a "go between" and charged for it.

26.     Helfant convinced Plaintiff that retaining McCue gave Trident/Trio legitimacy for booking dates with the Greek Theater. What was later learned, was the following:

a.  Helfant/McCue refused to allow Trident to be on the phone with the

TRIDENT/HELFANT COMPLAINT

Greek Theater during the negotiations;

b. McCue admitted that since he left the Greek Theater as its GM, that the Greek Theater had completely revamped and revised its protocols for booking concerts and securing dates with acts, so that it was more transparent, since the Greek was/is owned by the City of Los Angeles. So the "influence" or information being promised was deminimus.

c. The Greek had published on its website a transparent protocol whereby any act could "bid" for dates by sending in an application with a deposit of $25,000 per night requested. Petitioner/Plaintiff Trident only discovered this after Helfant/McCue had been retained.

d. When Trident presented this information to Helfant, he kept downplaying the discrepancy and insisted that we stick with his plan, which only resulted in delays and over-bloated, unnecessary billing by Helfant.

27.    Thus, any entity or party or individual could book directly with the Greek Theater for securing concert dates. There was no need for Helfant or his consultant, Jim McCue.

28.    Indeed, the City of Los Angeles, Department of Recreation and Parks, posts on the Internet, its General Booking Policy for the Greek Theater. Plaintiff/Petitioner discovered/obtained this document, in September 2023, well after Helfant had been retained. Helfant aggressively dissuaded Trident from following the General Booking Policy of the Greek Theater. By not following the published Greek Theater, Trident almost lost out on dates, because Helfant delayed until October before approaching the Greek, even though Plaintiff retained Helfant in July to approach the Greek Theater.

29.    So the basis of the Greek Theater's decision to give Plaintiff dates

TRIDENT/HELFANT COMPLAINT

really involved Plaintiff's application. McCue disappeared after he got his $10,000 and Helfant kept trying to get Trident to hire his clients for producing the show or producing the movie, at outrageous cost bids, all of which were rejected.

30.     In fact, Helfant did not present Trident's concert proposal until October 26, 2023. Plaintiff had engaged David Helfant in discussions in July. Plaintiff told Helfant that time was of the essence as the Greek Theater books over a year in advance. Helfant didn't secure a final date from the Greek until January 2024. Helfant did not help, but rather hindered Plaintiff's efforts and misrepresented his expertise in dealing with the Greek. That explains why he refused to allow Plaintiff to participate in any conference call with the Greek Theater.

31.     After some back and forth with the Greek Theater because neither Helfant nor McCue knew the current protocols for locking in dates with the Greek, Plaintiff finally submitted a proposal acceptable to the Greek Theater on November 19, 2023. Helfant had been engaged in July, with a signed retainer in August 2023. Yet owing to his misrepresentations about his expertise Plaintiff did not secure dates until January 2024. That adversely impacted Plaintiff's promotion of the concerts and adversely impacted the available dates for selection of the two nights of concerts.

32.     Because of Helfant's lack of knowledge, despite representations to the contrary, about Greek Theater booking protocols, The Greek Theater did not confirm dates with Plaintiff until January 17, 2024, leaving Plaintiff less than 7 months to promote the concerts. Plaintiff had started this project with Helfant in July of 2023. He can't justify the 6-month delay, nor should Plaintiff have to pay for his lack of knowledge nor his misrepresentations about his expertise and "inside track" access to the Greek.

33.     When Plaintiff met with Greek Theater management in late January

TRIDENT/HELFANT COMPLAINT

and February 2024, nothing about Helfant or McCue was raised, except being asked "who was the contact person for Trident?". So thousands of dollars and months of time delayed Plaintiff from promoting the show and caused Plaintiff delays in securing the best dates that Plaintiff wanted.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

AS AND FOR A FIRST CLAIM FOR RELIEF FOR BREACH OF CONTRACT AGAINST ALL DEFENDANTS, PLAINTIFF ALLEGES:

34.     Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 33, inclusive, of Plaintiff's Complaint with the same force and effect as though set forth in full herein. A Retainer Agreement is attached hereto as Exhibit 1, constituting a Certificate of Engagement between Plaintiff and Defendant.

35.     The contract contemplated that Helfant had expertise and inside knowledge of how to expeditiously assist Trident Productions with putting the Kingston Trio on the schedule of the Greek Theater. Instead, Helfant kept billing the Plaintiff and did not deliver the services promised. Indeed, this was proven by the fact that when Trident met with the Greek Theater after Helfant departed the project, there was nothing in place in terms of promised benefits and in perks under the contact. In essence, the contract had to be almost renegotiated.

36.     Plaintiff performed all of its duties except paying Helfant in full on his invoice because it was clear that Helfant had breached the contract materially as described hereinabove in paragraphs 10 through 33.

37.     Thus, Helfant has breached the Retainer Agreement in question and for which Trident seeks damages in excess of $250,000.

## SECOND CLAIM FOR RELIEF

### (Breach of the Covenant of Good Faith and Fair Dealing)

AS AND FOR A FIRST CLAIM FOR RELIEF FOR BREACH OF THE

COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST ALL
DEFENDANTS, PLAINTIFF ALLEGES:

38.    Plaintiff realleges and incorporates by reference paragraphs 1 through
33 inclusive of Plaintiff's Complaint herein above with the same force and affect
as those set forth in full herein below.

39.    Under California Law, all contracts have the implied covenant of Good
Faith and Fair Dealing. In the instant case the above referenced contract was
breached and there was a lack of Good Faith and Fair Dealings by Defendants.
Thus, Plaintiff seeks damages in excess of $250,000 for the breach of the Covenant
of Good Faith and Fair Dealing.

**THIRD CLAIM FOR RELIEF**

(Fraud)

AS AND FOR A FIRST CLAIM FOR RELIEF FOR FRAUD AGAINST
ALL DEFENDANTS, PLAINTIFF ALLEGES:

40.    Plaintiff realleges and incorporates by reference paragraphs 10 through
33 inclusive, of Plaintiff's Complaint herein above with the same force and affect
as those set forth in full herein below.

41.    Based on the facts set forth herein above at paragraph 10 through 33,
Helfant clearly misrepresented his expertise, his knowledge, experience, and
access to Greek Theater booking protocols.

42.    Defendant knew his multiple representations were false at the time he
made the, Furthermore, Defendant Helfant knew that Plaintiff Trident was
reasonably relying on his false representations.

43.    Accordingly, to Trident's detriment, Helfant did not preform as
promised and in fact caused Trident to expend countless hours of attorney time and
production time in other expenditures in order to pull off the concert in August of
2024 for which Helfant had been retained.

TRIDENT/HELFANT COMPLAINT

44.     Therefore, Plaintiff alleges that it has been damaged in excess of $250,000, or an amount to be proven at trial. Because Helfant's conduct is so outrageous and done with malicious intent, punitive damages should also be awarded.

## FOURTH CLAIM FOR RELIEF

(Declaratory Relief)

AS AND FOR A FIRST CLAIM FOR RELIEF FOR DECLARATORY RELIEF AGAINST ALL DEFENDANTS, PLAINTIFF ALLEGES:

45.     Plaintiff realleges and incorporates by reference paragraphs 1 through 33 inclusive, of Plaintiff's Complaint herein above with the same force and affect as those set forth in full herein below.

46.     A dispute has arisen concerning a contract attached hereto and described herein above. Plaintiff seeks a declaration of all his rights and remedies under the contract, pursuant to the Federal Declaratory Relief Act Declaratory Judgment pursuant to 28 U.S.C §2201.

## PRAYER

WHEREFORE, Plaintiff prays for relief as follows:

**FOR THE FIRST CLAIM FOR RELIEF FOR BREACH OF CONTRACT AS TO DEFENDANT HELFANT AND DOES 1 THROUGH 10, INCLUSIVE:**

1.     For damages in at least the sum of Two Hundred and Fifty Thousand Dollars ($250,000) including late fees or an amount to be proved at trial;

2.     For Attorney's Fees to be proved at trial;

3.     For Interest to be proved at trial;

4.     For other relief that the court may grant;

**FOR THE SECOND CLAIM FOR RELIEF FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING AS TO**

TRIDENT/HELFANT COMPLAINT

**DEFENDANT HELFANT AND DOES 1 THROUGH 10, INCLUSIVE:**

1.    For damages in at least the sum of Two Hundred and Fifty Thousand Dollars ($250,000) including late fees or an amount to be proved at trial;

2.    For Attorney's Fees to be proved at trial;

3.    For Interest to be proved at trial;

4.    For other relief that the court may grant;

    **FOR THE THIRD CLAIM FOR FRAUD AS TO DEFENDANT HELFANT AND DOES 1 THROUGH 10, INCLUSIVE:**

1.    For damages in at least the sum of Two Hundred and Fifty Thousand Dollars ($250,000) including late fees or an amount to be proved at trial;

2.    For Attorney's Fees to be proved at trial;

3.    For Interest to be proved at trial;

4.    For other relief that the court may grant;

5.    For punitive damages, an amount to be ascertained at Trial;

    **FOR THE FOURTH CLAIM FOR DECLARATORY RELIEF AS TO DEFENDANT HELFANT AND DOES 1 THROUGH 10, INCLUSIVE:**

1.    For damages in at least the sum of Two Hundred and Fifty Thousand Dollars ($250,000) including late fees or an amount to be proved at trial;

2.    For Attorney's Fees to be proved at trial;

3.    For Interest to be proved at trial;

4.    For other relief that the court may grant;

**FOR ALL CLAIMS FOR RELIEF:**

55.    For costs of suit incurred herein; and

56.    For any such other and further relief as this Honorable Court deems

TRIDENT/HELFANT COMPLAINT

just and proper.

DATED: May 9, 2025                    TROPE AND TROPE LAW GROUP

_____
Konrad L. Trope, Esq.
Attorney for TRIDENT CONCERT
PRODUCTIONS, LLC, a limited
liability company,

TRIDENT/HELFANT COMPLAINT